**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JAMES R. CHAPMAN,**

    **Plaintiff,**

    v.

                              **Civil Action 2:14-cv-1828
                              Judge George C. Smith
                              Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL
SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

    Plaintiff, James R. Chapman, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance benefits.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 15), the Commissioner's Memorandum in Opposition (ECF No. 16), Plaintiff's Reply (ECF No. 17), and the administrative record (ECF Nos. 9, 10).  For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## I.  BACKGROUND

### A.  PROCEDURAL HISTORY

Plaintiff filed his application for benefits in March 2012, alleging that he has been disabled since October 29, 2001[1] due to, among several conditions, depression and anxiety.  (R. at 245-53, 366, 375.)  Plaintiff's application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  Administrative Law Judge Jerry Faust ("ALJ") held two video hearings on April 30, 2013 and September 12, 2013, at which Plaintiff, represented by counsel, appeared and testified.  (R. at 27-44, 45-77.)  Hermona Robinson, a vocational expert, also appeared and testified at the April 30, 2013, hearing.  On December 13, 2013, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 7–21.)  On August 5, 2014, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1–5.)  Plaintiff then timely commenced the instant action.

### B.  PLAINTIFF'S HEARING TESTIMONY

Plaintiff testified that he believes he is severely depressed.  (R. at 60.)  Although he uses medication and sees a psychologist and psychiatrist, Plaintiff did not feel that the treatment helped him feel less depressed.  (*Id*.)  Plaintiff testified that he felt "like a zombie."  (*Id*.)  According to Plaintiff, he frequently becomes disoriented and confused.  (R. at 61.)  Plaintiff testified that although he had pursued certain hobbies in the past, some had become too expensive and others had become less enjoyable.  (R. at 62-63.)  Plaintiff stated that during the two years leading up to the administrative hearing he increasingly lacked the motivation to get

---

[1] Plaintiff originally claimed disability as of July 25, 2008, but later amended his alleged onset date.  (R. at 293.)  He previously filed for benefits on March 19, 2009, but the Appeals Council denied the claims on October 28, 2011.  (R. at 76-96, 98.)

up and would "sit in my chair and just stare," periods which he ascribed to his depression. (R. at 63.) Plaintiff also testified that he had not been hospitalized for a psychiatric condition, although his medical records state otherwise, as explained below. (R. at 63.)

## C. MEDICAL RECORDS

### 1. Veteran's Administration Medical Center ("VA")

On November 16, 2011, Patrice T. Arehart, M.D. saw Plaintiff for a psychiatric consultation in the psychiatry department at the VA. (R. at 780-83.) Plaintiff presented with anxiety which he attributed to the death of his fourteen year old daughter in an auto accident in 2000. (R. at 780.) Dr. Arehart found Plaintiff cooperative, friendly, and talkative. (R. at 782.) He denied any suicidal or homicidal ideation and exhibited no memory deficits. (*Id*.) According to Dr. Arehart, Plaintiff's mood was "slightly anxious" and his affect was restricted. (*Id*.) Plaintiff reported his energy level was good. (*Id*.) Plaintiff also stated that he enjoyed activities such as collecting coins and playing games on the internet. (*Id.*) Dr. Arehart diagnosed an Anxiety Disorder and assigned Plaintiff a Global Assessment of Functioning ("GAF") Score of 70, and continued his Alprazolam treatment. (R. at 782-783.)

In June 2012, Plaintiff met with psychologist, Amy E. Shaver, Ph.D., to establish psychotherapy services at the VA. (R. at 909-914.) Plaintiff reported longstanding symptoms of depression and anxiety, which began with the death of his daughter in 2000. (R. at 910.) Plaintiff acknowledged loss of interest in and enjoyment of his hobbies, collecting coins and Hot Wheels cars. (*Id*.) Plaintiff also reported that "he becomes nervous, disoriented and confused, especially when in crowds." (*Id*.) Plaintiff also stated that he is hyper vigilant and habitually checks door and window locks at night. (*Id*.)

According to Dr. Shaver's assessment, Plaintiff was previously diagnosed with Post-Traumatic Stress Disorder. (*Id.*) That previous assessment noted that Plaintiff experienced two non-combat traumas arising during military live-fire training exercises and underwent a ten-day psychiatric hospitalization in 1978. (R. at 910-912.)

Plaintiff reported that he discontinued the use of alcohol in 2002 to care for his wife after she had open heart surgery. (R. at 911.) Dr. Shaver found Plaintiff alert and oriented. (R. at 912.) According to Dr. Shaver, Plaintiff had appropriate thought content; normal speech and behavior; a logical, linear, and goal-directed thought process; no suicidal or homicidal ideation; no evidence of hallucinations, delusional thoughts, or thought disorder; and adequate judgment. (*Id.*) Dr. Shaver assessed bereavement, Anxiety Disorder, Depressive Disorder, but ruled out Post-Traumatic Stress Disorder and Obsessive Compulsive Disorder. (*Id.*) She assigned Plaintiff a GAF score of 52. (R. at 913.)

### 2. John P. Zaino, M.D.

Plaintiff first saw Dr. Zaino in January 2011 to transfer his care to the Columbus VA. (R. at 1290-94.) Plaintiff was seen in the primary care clinic on September 6, 2011, for follow-up. (R. at 794-98.) He reported he was "doing fairly good." (R. at 794.) Plaintiff was assessed with anxiety disorder/PTSD. (R. at 796.) Plaintiff visited Dr. Zaino again in May 2012 and reported feeling depressed because he had to move to another house. (R. at 922.)

### 3. Tarun Mehra, M.D.

The record shows that primary care physician, Dr. Mehra treated plaintiff from 2005 (R. at 1391-92) until at least January 2013. (R. at 596-746, 873-955, 969-76.) Plaintiff met with Dr. Mehra in September 2012, and assessed Plaintiff's mental status as "negative" for any psychiatric symptoms. (R. at 882.) Dr. Mehra found Plaintiff had generalized anxiety disorder

4

and continued Plaintiff's medications. (R. at 883.) In January 2013, Plaintiff reported no aggressive behavior, crying spells, memory loss, stress, or anger. (R. at 970.) Dr. Mehra found Plaintiff had good judgment, no memory loss, and normal mood and affect. (R. at 971.) He continued Plaintiff's diagnoses of generalized anxiety disorder. (*Id.*)

### 4. State Agency Review

In April 2012, after review of Plaintiff's medical record, Bonnie Katz, Ph.D., a state agency psychologist, assessed Plaintiff's mental condition. (R. at 103-04.) Dr. Katz opined that Plaintiff was mildly limited in his activities of daily living, mildly impaired in maintaining social functioning and in maintaining concentration, persistence, or pace; and had no repeated episodes of decompensation for an extended duration. (R. at 104.) She further determined that the evidence did not establish the presence of the "C" criteria. (*Id.*) In her concluding remarks, Dr. Katz noted her assessment is an adoption of the ALJ decision from June 2011 pursuant to AR 98-4. (*Id.*) In July 2012, state agency psychologist Mel Zwissler, Ph.D., reviewed the file and affirmed Dr. Katz's assessment. (R. at 115-16.)

### 5. ADMINISTRATIVE DECISION

On December 13, 2013, the ALJ issued his decision. (R. at 7–21.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2013. (R. at 12.) At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantially gainful activity since his amended alleged onset date of October 29, 2011. (*Id.*) The ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine; left knee osteoarthritis; chronic obstructive pulmonary disease (COPD); coronary artery disease; hyperlipidemia; and hypertension. (*Id.*) The ALJ determined that Plaintiff's depression is not a severe medically determinable impairment. (R. at 13.) He

5

further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14.) After completing the remaining steps of the sequential review, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (R. at 21.)

## II.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

6

where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### III. ANALYSIS

Plaintiff challenges to the ALJ's decision on the basis that the ALJ failed to apply the proper legal standard in evaluating Plaintiff's mental health impairment claims. (ECF No. 15 at 12.) The Undersigned agrees.[1]

"'When a record contains evidence of a mental impairment that allegedly prevented claimant from working, the Secretary is required to follow the procedure for evaluating the potential mental impairment set forth in his regulations and to document the procedure accordingly.'" *Zuckschwerdt v. Comm'r of Soc. Sec.*, No. 07-11084, 2008 WL 795772 at *6 (E.D. Mich. 2008) (citing *Andrade v. Sec'y. of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir. 1993) (internal citations omitted); 20 C.F.R. § 404.1520a. When applying the Psychiatric Review Technique ("PRT"),

> [a]t the administrative law judge hearing and Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s).

20 C.F.R. § 404.1520a(e)(4). By regulation, proper application of the PRT by the ALJ "must include a specific finding as to the degree of limitation" regarding Plaintiff's daily living; social functioning; concentration, persistence, or pace; and episodes of decomposition. *Id*. "These findings and conclusions are documented in . . . the Psychiatric Review Technique Form that

---

[1] This finding obviates the need for in-depth analysis of Plaintiff's remaining assignment of error. The Court notes, however, Plaintiff's contention that the ALJ's residual functional capacity determination is not supported by substantial evidence. Yet, the Undersigned need not, and does not, resolve the alternative basis that Plaintiff asserts in support of reversal and remand.

7

describes the application of the prescribed technique." *Zuckschwerdt* at *6. However, "[t]he failure to complete the Psychiatric Review Technique form ["PRTF"], an adjudicatory tool," by itself, "is not significant." *Clark v. Sullivan*, No. 92-1030, 1992 WL 296709 at *4 (6th Cir. 1992).

## A. The ALJ Failed to Document Application of the Psychiatric Review Technique

In his opinion, the ALJ devoted one paragraph to Plaintiff's mental impairment claims. (R. at 13.) By way of introduction, the ALJ briefly mentioned Plaintiff's testimony regarding his mental impairments in four lines of text. (*Id*.) The ALJ proceeded to summarize Plaintiff's November 2011 and May 2012 psychiatry consultations at the VA and Plaintiff's September 2012 and January 2013 consultations with Dr. Mehra. (*Id*.) The ALJ concluded that Plaintiff does not have a severe mental health impairment. (*Id*.) The ALJ noted, after his discussion of the facts and his conclusion, that he gave great weight to the two state agency psychologists' assessments. (*Id*.) Those assessments found that Plaintiff had mild limitations in three of the functional areas, but no limitation in the fourth. (R. at 104, 116.) Although the ALJ did so in a somewhat cursory and unsystematic way, his written opinion does generally show "the significant history" that was considered in coming to his conclusion. 20 C.F.R. § 404.1520a (e)(4). The ALJ's written opinion falls short of the required standard, however, in his discussion of Plaintiff's functional limitations and documentation of the PRT.

By regulation, when applying the PRT, the ALJ must "show . . . the functional limitations that were considered." Although both state-agency consultants concluded that Plaintiff demonstrated functional limitations in three of the four functional areas, the ALJ's discussion presents only those pieces of the record that tend to show no functional limitations. (R. at 13, 104, 106.) Furthermore, the ALJ failed to discuss Plaintiff's actual degree of functional

8

limitation, as required by regulation.

Regulations mandate that the ALJ's "decision *must include a specific finding* as to the degree of limitation in *each* of the functional areas described in paragraph (c) of this section." 20 C.F.R. § 404.1520a(d)(4) (emphasis added). The ALJ's written opinion, however, contains no specific findings as to any of the functional areas. Indeed, the written opinion does not mention the PRT, the governing regulation, or any of the four functional areas. It is not clear from the ALJ's written decision to what extent he considered the four functional areas or whether employed the PRT at all.

**B. The ALJ's Opinion does not Adopt State-Agency Assessments**

Defendant argues that "[b]y relying on the state agency psychologists' assessments in step two, the ALJ effectively adopted their PRT analyses, obviating the need to repeat their findings already contained in the record." (ECF No. 16 at 6.) In support of its argument, Defendant urges the Court to adopt the reasoning in *Petrie v. Astrue*, 412 F. App'x 401, 408-409 (2d Cir. 2011).[2] In *Petrie*, the Second Circuit found that by relying on the state-agency reviewing psychologist's PRTF, "[t]he ALJ thus adopted the PRTF in part and proceeded to assess Petrie's RFC." *Id*. at 409. An analogy of the instant case to *Petrie*, however, is inapt. As the Magistrate Judge's Report and Recommendation in *Petrie* makes clear, the ALJ made the required specific findings in his written opinion. *Petrie v. Astrue*, No. 08-CV-1289, 2009 WL 6084277 at *8 (N.D. New York Nov. 10, 2009) ("The ALJ concluded that Plaintiff has mild restriction with respect to activities of daily living, moderate difficulties as to social functioning and concentration/persistence/pace, and no repeated episodes of decompensation of extended

---

[2] The Sixth Circuit has not addressed the situation presented in *Petrie*. Although the Undersigned finds the present case distinguishable on its facts, the analysis below accords *Petrie* appropriate deference as persuasive, but ultimately non-binding, authority.

duration. (T. at 24).")." The ALJ's written opinion in *Petrie*, therefore, allowed the reviewing court to compare the ALJ's factual discussion with his specific findings and thereby conclude that he properly applied the psychiatric review technique.

In the instant case, the ALJ makes no specific findings as to Plaintiff's functional limitations. Furthermore, the ALJ's written opinion does not indicate that he adopted the state-agency findings or reasoning. If the ALJ intended to adopt the state-agency findings, it is reasonable to expect he would at least note the degree of limitation found by the state-agency psychologists in three functional areas, as well as highlight their finding of no functional limitation in the fourth, and briefly explain why the findings are legally appropriate. Instead, the ALJ merely remarks that he "gave great weight to the state agency psychological assessments," noting that "[t]heir conclusions are well supported." (R. at 13.) Without some analysis and the required specific findings, however, it is not possible to conclude that the ALJ's written decision "was made pursuant to [the] proper legal standard[]," the psychiatric review technique. *Rabbers*, 582 F. 3d at 651.

## C. The ALJ's Error is not Harmless

The ALJ's failure to properly document his application of the PRT in the instant case is not harmless. An error is harmless only if remanding the matter to the agency "would be an idle and useless formality" because "there is [no] reason to believe that [it] might lead to a different result." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 520 (6th Cir. 2011) (citing *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x. 171, 173 (6th Cir. 2004)). As explained above, however, the Undersigned cannot discern from the written decision whether the ALJ came to his conclusion regarding Plaintiff's mental impairment claims by proper application of the appropriate legal standard. The ALJ's written opinion fails to document the application of the PRT. Instead the

10

ALJ merely recites facts favorable to his conclusory determination that "the claimant has no severe mental health impairments." (R. at 13.) Without more, the written opinion with respect to the ALJ's mental health impairment evaluation does not allow for meaningful judicial review. The Undersigned, therefore, finds that the ALJ's failure to document application of the PRT was not harmless.

## IV.  CONCLUSION

For the reasons explained above, the Undersigned finds that the ALJ failed to properly document application of the Psychiatric Review Technique, as required by 20 C.F.R. § 404.1520a(e)(4). Consequently, the ALJ's error prevents meaningful judicial review of his written decision. Any error in this regard, therefore, is not harmless. It is, therefore, **RECOMMENDED** that the Commissioner's decision be **REVERSED** and that this action be **REMANDED** to the Commissioner and the ALJ under Sentence Four of § 405(g).

## V.  PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate

judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: January 8, 2016                                          /s/ *Elizabeth A. Preston Deavers*
                                                                         ELIZABETH A. PRESTON DEAVERS
                                                                         UNITED STATES MAGISTRATE JUDGE